IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| TRAVIS R. ARGABRIGHT, | : | Case No. 3:11-cv-244 |
| Plaintiff, | | District Judge Walter H. Rice. |
| | : | Magistrate Judge Michael J. Newman |
| vs. | | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS CASE BE REMANDED FOR AN IMMEDIATE AWARD OF SSI BENEFITS WITH AN ONSET DATE OF SEPTEMBER 1, 2007; AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. § 1383(c). At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff Travis Argabright ("Plaintiff") "not disabled" and therefore unentitled to Supplemental Security Income ("SSI") because he retained the residual functional capacity for a limited range of "light" work.[2]

This case is before the Court upon Plaintiff's Statement of Errors (doc. 11), the Commissioner's Memorandum in Opposition (doc. 12), and the administrative record (doc. 8).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.
[2] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 416.967. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

# I. BACKGROUND

## A. Procedural History

Plaintiff filed his application for SSI on April 10, 2007, asserting that he has been under a "disability" since October 1, 2006. Doc. 8-5 at PageID 138-44. He initially claimed disability due to his "heart, back, shoulder and arm problems, carpal tunnel in both hands and blindness in left eye," and later reported that he had developed blood clots, degenerative disc disease and bulging discs. Doc. 8-6 at PageID 155, 193.

Following initial administrative denials of his application, Plaintiff received a hearing before ALJ Amelia Lombardo on December 17, 2009. Doc. 8-2 at PageID 74-96. On May 6, 2010, ALJ Lombardo issued a written decision, concluding that Plaintiff could perform a limited range of light work and was not "disabled." *Id.* at PageID 47-62. Specifically, the ALJ's "Findings," which represent the rationale of her decision, were as follows:

1. The claimant has not engaged in substantial gainful activity since April 2, 2007, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: a hypercoagulable state, of unknown etiology; loss of the left eye; lumbar degenerative disc disease; cervical osteoarthritis; obesity; distal neuropathy; and a cognitive disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR 416.967(b) except that, due to total vision loss of the left eye, he can perform no commercial driving and no reading of anything smaller than newsprint for more than one third of the workday. Due to memory loss, his work must be unskilled.

5. The claimant is unable to perform any past relevant work (20 CFR

|     |     |
| --- | --- |
|     | 416.965). |
| 6.  | The claimant was born on July 6, 1979 and was 27 years old, which is defined as a younger individual age[d] 18-49, on the date the application was filed (20 CFR 416.963). |
| 7.  | The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964). |
| 8.  | Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
| 9.  | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)). |
| 10. | The claimant has not been under a disability, as defined in the Social Security Act, since April 2, 2007, the date the application was filed (20 CFR 416.920(g)). |

*Id.* at PageID 49-61.

On June 2, 2011, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. *Id.* at PageID 39-41; *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then timely filed this appeal on July 14, 2011. Doc. 1.

**B. Administrative Hearing**

At the administrative hearing, Plaintiff reported that he is 6'6" and weighs 400 pounds. Doc. 8-2 at PageID 77. He testified that he is unable to work due to multiple impairments. He specifically reported that his neck and back were "messed up," and he has pain and swelling in his left leg due to a blood clot. *Id.* Further, as a result of Vitamin B-12 deficiency, Plaintiff

3

experiences numbness in his arms and legs, as well as memory loss. *Id.* at PageID 80. Plaintiff also testified that his left eye was removed, and he has tunnel vision in his right eye. *Id.* at PageID 78-80.

Plaintiff estimated he can walk less than one block, stand for five to ten minutes, and sit for twenty minutes at one time. *Id.* at PageID 81-82. He reported that he can lift approximately five pounds. *Id.* at PageID 82. He also advised he has difficulty using his arms, hands and fingers due to numbness. *Id.*

Plaintiff further testified that he has had five blood clots in the last two years: one in his left leg, two in his right leg, and two in his lungs. *Id.* at PageID 84. As treatment, he receives injections of Lovenox (a blood thinner) twice a day, and experiences dizziness and lightheadedness as side effects. *Id.* Additionally, Plaintiff testified that his doctors have instructed him to keep his legs elevated most of the day. *Id.* at PageID 85. On a ten-point pain scale, Plaintiff rated the pain in his left leg as a seven; the pain in his back and neck as an eight; and the pain in his left eye as a seven. *Id.* at PageID 85-87. He takes Oxycodone for the pain. *Id.* at PageID 81.

Vanessa Harris, a vocational expert ("VE"), also testified at the hearing. *See id.* at PageID 90-92. Based on the RFC proposed by the ALJ, the VE testified that there are 4,000 "medium" jobs and 4,500 "light" jobs in the regional economy that Plaintiff can perform. *Id.* at PageID 91. The VE further acknowledged, however, that there are no available jobs for an individual that needs to elevate his or her legs twelve inches off the floor for at least two hours a day. *Id.* at PageID 92.

4

## II. APPLICABLE LAW

The Court's inquiry on appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. §§ 405(g), 1383(c)(3); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Thus, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 1382c(a)(3)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in

"substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step ends the ALJ's review, *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity ("RFC"), can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### III. ANALYSIS

Plaintiff's complicated medical history has been adequately summarized in the parties' briefs. *See* doc. 11 at PAGEID 804-10; doc. 12 at PAGEID 821-25. As a way of background, the Court will nonetheless briefly list some of Plaintiff physical impairments. To begin, Plaintiff is obese – weighing 400 pounds at 6'6". *See* doc. 8-2 at PageID 77. Further, there is evidence showing that Plaintiff has mild degenerative disc disease and two small disc protrusions in his spine, *see* doc. 8-7 at PageID 222-25; neuropathy in his arms and legs, *see* doc. 8-9 at PageID

6

763-67; and cognitive deficits due to a Vitamin B-12 deficiency, *see id.* Additionally, Plaintiff has undergone multiple retinal surgeries, and in January 2009, his left eye was removed and he has now has a prosthesis. *See* doc. 8-7 at PageID 361-62; doc. 8-9 at PageID 653-72, 690. The ALJ found all of these impairments qualified as "severe" under Social Security regulations. *See* doc. 8-2 at PageID 49-50.

The focus of this appeal relates to Plaintiff's history of pulmonary emboli ("PE") and deep vein thrombosis ("DVT").[3] At the end of August 2007, Plaintiff went to the hospital for right-sided chest pain and was diagnosed with a pulmonary embolism in his distal right and small left lower lobes. *See* doc. 8-7 at PageID 303, 305. He stayed in the hospital for seven days, and started taking Coumadin.[4] *Id.* However, four days after discharge, he returned to the hospital with chest pain, and was found to have a progressive embolus in the left lower lobe. *Id.* He was subsequently transferred to the Ohio State University Medical Center for a second opinion. *Id.* A September 10, 2007 study revealed DVT in both legs. *Id.* at PageID 306. As a result, Plaintiff will likely need lifetime anti-coagulation (anti-clotting) medication. *Id.* at PageID 306-07.

Plaintiff argues that the ALJ's RFC determination is unsupported by substantial evidence because the ALJ improperly gave significant weight to the state agency reviewer, Diane Manos, M.D. over the medical opinion of his treating vascular specialist, Dr. Kraut, and thus violated the treating physician rule. *See* doc. 11 at PageID 812-17. *Id.* For the reasons that follow, the Court finds Plaintiff's argument is well-taken.

---

[3] Deep vein thrombosis ("DVT") is a disease that occurs when there is the formation of one or more thrombi (clots) in the deep veins, usually in the extremity or in the pelvis. *Stedman's Medical Dictionary* 1985 (28th ed. 2006). DVT carries a risk of pulmonary embolism (blood clots of the pulmonary arteries). *Id.* at 627, 1985.

[4] Coumadin (Warfarin) is a tablet taken "to prevent blood clots from forming or growing larger in your blood and blood vessels." http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000634/ (Sept. 1, 2010).

### A. Treating Physician Rule

The treating physician rule "requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because:

> 'these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'"

*Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (brackets in original; citations omitted). Thus, an ALJ must give controlling weight to a treating source if he or she finds the opinion well-supported by medically acceptable data and not inconsistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). Even if a treating physician's opinion is not entitled to controlling weight, the ALJ must still evaluate the medical opinion by applying the relevant factors, including: "(1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, and (5) the specialization of the treating source." *Bowen*, 478 F.3d at 747 (citing 20 C.F.R. § 404.1527(d)(2)). "[T]here remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (citation omitted).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406 (quoting 20 C.F.R. § 416.927(d)(2)). "Those good reasons must be 'supported by the evidence in the case

record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* at 406-07 (citing SSR 96-2p, *available at* 1996 SSR LEXIS 9, at *12).

      **B.**      **Treating Vascular Specialist, Eric Kraut, M.D.**

Eric Kraut, M.D. is a vascular specialist at the Ohio State University Medical Center who began treating Plaintiff in September 2007 when Plaintiff was hospitalized for a pulmonary embolism. Doc. 8-7 at PageID 308-09. He then followed-up with Plaintiff the following October, December and April, each time noting that Plaintiff has pain and/or swelling in his leg(s). *Id.* at PageID 363, 370-71. On August 4, 2008, Dr. Kraut completed a questionnaire, opining that Plaintiff cannot perform any work on a sustained basis, and needs to keep both of his legs elevated twelve inches off the floor for two hours during the day.[6] Doc. 8-8 at PageID 612. Dr. Kraut continued to see Plaintiff after he rendered this medical opinion. *See* doc. 8-9 at PageID 691-93.

The ALJ addressed Dr. Kraut's medical opinion, but ultimately gave it "little weight" in assessing Plaintiff's RFC. Doc. 8-2 at PageID 60. The ALJ provided the following reasons for reaching that conclusion: Dr. Kraut had only seen Plaintiff three times before rendering his medical opinion and thus did not qualify as a "treating source"; and, according to the ALJ, Dr. Kraut's disability finding was inconsistent with his treatment notes and the record as a whole. *See id.* The Court finds that these were not sufficient reasons to reject Dr. Kraut's opinion.[7]

To begin, the Court disagrees with the ALJ's determination – that Dr. Kraut was not Plaintiff's treating physician at the time he rendered his medical opinion. To qualify as a treating

---

[6] The leg-elevation requirement is significant because the VE testified that an individual with such a restriction would be unable to perform even sedentary work. *See* doc. 8-2 at PageID 92.
[7] Although the ALJ states that Dr. Kraut's opinion is given "little weight," in reality, *no* weight is given to his opinion as the ALJ did not accept his leg-elevation recommendation nor his opinion that Plaintiff does not have the capacity to perform full-time work.

source, a doctor must have an ongoing treatment relationship with the claimant, seeing him or her "'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required that is typical for the treated condition(s).'" *Blakely*, 581 F.3d at 407 (quoting 20 C.F.R. § 404.1502; brackets omitted). Thus, "[a] physician seen infrequently can be a treating source 'if the nature and frequency of the treatment or evaluation is typical for [the] condition.'" *Id.* Whether a doctor meets this standard requires a "fact-specific inquiry." *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 416 (6th Cir. 2006).

Given Plaintiff's condition and treatment, Dr. Kraut saw Plaintiff with sufficient frequency to qualify as his treating physician. He actually saw Plaintiff four times – not three (as the ALJ found) – in less than one year before rendering his disability opinion, and also continued to treat him afterward.[8] *See* doc. 8-7 at PageID 308-09, 363, 370-71; doc. 8-9 at PageID 691-93. Further, the frequency of Plaintiff's visits was consistent with Dr. Kraut's expectations – *i.e.,* on two visits, Dr. Kraut advised that he did not need to see Plaintiff again for four to five months. *See* doc. 8-7 at PageID 309, 371. Moreover, Dr. Kraut's opinion was based on his *treatment* of Plaintiff. Before rendering his medical opinion, he had examined Plaintiff on four separate occasions, conducted tests on Plaintiff (*e.g.,* a duplex ultrasound of his leg and blood tests), and managed his medication. *See* doc. 8-7 at PageID 308-09, 363, 370-71; *cf. Hakkarainen v. Astrue*, No. 1:10-cv-2463, 2012 U.S. Dist. LEXIS 16431, at *41-42 (N.D. Ohio Jan. 19, 2012) (determining that a doctor – who had seen the claimant four times, performed a physical evaluation of the claimant, and managed the claimant's medications – qualified as a "treating source"); *Carroll v. Astrue*, No. 1:09-cv-1232, 2010 U.S. Dist. LEXIS 65566, at *21 (N.D. Ohio July 1, 2010) (finding

---

[8] Dr. Kraut first saw Plaintiff on September 13, 2007 when he was admitted to the hospital for his pulmonary embolus, plus three follow-up visits, before he rendered his medical opinion. *See* doc. 8-7 at PageID 308-09, 363, 371.

a doctor, who had seen the claimant four times, qualified as a treating physician).

In addition, the ALJ significantly failed to note that Dr. Kraut, as a vascular specialist, was entitled to more weight – with respect to Plaintiff's limitations due to his DVT – than the opinion of the non-specialist, a state agency doctor. *See* 20 C.F.R. § 416.927(c)(5); *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011).

In the Court's view, the record does not support the ALJ's rejection of Dr. Kraut's medical opinion. Contrary to the ALJ's determination, the Court finds Dr. Kraut's recommendation – that Plaintiff needs to elevate his legs – is supported by his treatment notes. He consistently reports that Plaintiff has pain and swelling in one or both of his legs, *see* doc. 8-7 at PageID 308-09, 363, 370-71; doc. 8-9 at PageID 691-93, and elevation of the legs is a common treatment for individuals with DVT and/or history of pulmonary embolism. *See* Lee R. Russ, *et al.*, *Cardiovascular Dysfunction – Blood Clots*, 2 Attorneys Medical Advisor § 25:43 (2012). Additionally, the ALJ's statement – that Dr. Kraut's April 2008 and December 2008 notes indicate that Plaintiff is doing well – is inaccurate. *See* doc. 8-2 at PageID 60. In those notes, Dr. Kraut merely states that Plaintiff had not had any recurrent blood clots, and in April 2008, he noted that Plaintiff has "chronic swelling of his legs." Doc. 8-7 at PageID 363; doc. 8-9 at PageID 692.

Moreover, the Court finds Dr. Kraut's disability opinion is consistent with the record as a whole. George Wang, M.D. – Plaintiff's former primary care physician who treated Plaintiff for three years – also opined in September 2007 that Plaintiff was disabled.[9] *See* doc. 8-8 at PageID 462-504, 470-72. Dr. Wang advised that he had observed the deterioration of Plaintiff's health

---

[9] Specifically, Dr. Wang reported that Plaintiff should be restricted to standing/walking for no longer than one to three minutes without interruption; sitting for no longer than ten minutes without interruption; and lifting no more than five pounds. Doc. 8-8 at PageID 470-72. Additionally, he noted that Plaintiff was extremely limited in performing repetitive foot movements and seeing; and was markedly limited in pushing, pulling, bending, and handling. *Id.* Notably, the Basic Medical form completed by Dr. Wang did not ask whether Plaintiff needed to elevate his legs in order to accommodate his impairments. *See id.*

due to his many conditions, including his recent episodes of PE and DVT. *Id.* at PageID 473. He stated: "Travis has been a very positive person in the fight with his medical problems. Unfortunately he is financially limited for his medical treatment and he does not have medical insurance. Medically he has been incapacitated and disabled since 8/30/2007 due to pulmonary embolism and DVT and several [sic] pain from DVT." Doc. 8-8 at PageID 473. Likewise, in November 2009, Plaintiff's more recent primary care physician, Barbara Hill, M.D., opined that Plaintiff is unable to perform work on a full-time basis. Doc. 8-9 at PageID 795.

In sum, the Court finds that Dr. Kraut was the most qualified treater and/or specialist and in the best position to assess how Plaintiff's history of PE and DVT affect his work-related abilities, and the ALJ erroneously decided to give his opinion "little weight." This constitutes reversible error because Dr. Kraut opined that Plaintiff needs to keep his legs elevated for at least two hours every day, which according to the VE's testimony, would preclude him from performing full-time work. *See* doc. 8-2 at PageID 92.

### C. State Agency Physician, Dr. Manos

In assessing Plaintiff's RFC, the ALJ gave significant weight to the state agency, non-examining physician, Diane Manos, M.D., claiming her opinion "is generally supported by the substantial medical evidence of record." *See* doc. 8-2 at PageID 58. The Court finds this part of the ALJ's analysis is likewise in error. On February 19, 2008, Dr. Manos completed a physical RFC assessment form, opining that Plaintiff can lift/carry up to twenty pounds occasionally and ten pounds frequently; and can stand/walk/sit for six hours in an eight-hour workday. Doc. 8-7 at PageID 345-53. Notably, the form did not contain a question asking if Plaintiff needs to elevate his legs, and Dr. Manos did not reference Dr. Kraut's opinion. *See id.*

An opinion of a record-reviewing physician must be weighed under the same factors as a treating physician. *See* 20 C.F.R. §§ 416.927(c), (e). In the present case, however, the ALJ did not mention how some of these relevant factors apply in evaluating Dr. Manos' opinion. *See* doc. 8-2 at PageID 58. Specifically, she failed to consider that Dr. Manos' opinion differed significantly from the objective medical evidence and medical opinions of Plaintiff's treating physicians, Dr. Kraut and Dr. Wang. Likewise, the ALJ did not take into account that Dr. Manos did not actually examine Plaintiff. Nor did the ALJ mention that, unlike Dr. Kraut, Dr. Manos was not a specialist. Thus, the ALJ failed to justify how she accepted a non-examining physician's opinion over that of Plaintiff's treating specialist. The ALJ's RFC analysis is therefore unsupported by substantial evidence.[10]

## IV. RECOMMENDATION

For the foregoing reasons, Plaintiff's assignment of error is well-taken. The ALJ erred in giving Dr. Kraut's opinion "little weight" because she ignored the medical evidence in the record supporting Dr. Kraut's opinion. The conflicting opinion of the non-examining, non-specialist physician, Dr. Manos, does not amount to substantial evidence for the ALJ to flatly reject Plaintiff's treating physician's opinion, particularly in light of the otherwise significant and consistent evidence in favor of Dr. Kraut's opinion. *See Rothgeb v. Astrue*, 626 F. Supp. 2d 797, 808 (S.D. Ohio 2009) (finding the ALJ's factual findings were unsupported by substantial evidence when the ALJ ignored the unfavorable evidence and used only the portions of the record that supported his position).

Thus, having found that the ALJ's non-disability determination is unsupported by substantial evidence, the Court has the authority to affirm, modify, or reverse the Commissioner's

---

[10] In light of this finding, it is unnecessary to address Plaintiff's remaining alleged error – that the ALJ proposed an incomplete RFC to the VE. *See* doc. 11 at PageID 817-18.

decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan,* 501 U.S. 89, 100 (1991). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *See Faucher v. Sec'y of Health & Human Servs.,* 17 F. 3d 171, 176 (6th Cir 1994); *Mowery*, 771 F.2d at 973; *Lowery v. Comm'r of Soc. Sec.*, No. 3:10-cv-427, 2011 U.S. Dist. LEXIS 154323, at *31-32 (S.D. Ohio Dec. 8, 2011) (Newman, M.J.), *adopted by* 2012 U.S. Dist. LEXIS 40333 (S.D. Ohio Mar. 23, 2012) (Rice, J.); *Valentine v. Astrue*, No. 3:10-cv-470, 2011 U.S. Dist. LEXIS 154178, at *29-30 (S.D. Ohio Dec. 7, 2011) (Newman, M.J.), *adopted by* 2012 U.S. Dist. LEXIS 36736 (S.D. Ohio Mar. 19, 2012) (Rice, J.).

Such is the case here. The proof of disability – following Plaintiff's episodes of PE and diagnosis of DVT – is great, and remand will serve no purpose other than delay. The VE testified that an individual, such as Plaintiff, who is required to elevate his legs two hours during the day would be precluded from performing any work. *See* doc. 8-2 at PageID 92. Therefore, all substantial factual issues have been resolved and the record reflects that Plaintiff is disabled since August 30, 2007. The Court acknowledges that Plaintiff alleges disability since October 1, 2006. However, the Court recommends that Plaintiff be awarded benefits with an onset date of September 1, 2007 – the date by which he suffered from a pulmonary embolsim, thereby requiring him to elevate his legs two hours during the day.[11]

---

[11] The medical records from the Ohio State University Medical Center report that Plaintiff had a pulmonary embolism "[a]t the end of August 2007," but do not provide an exact date. *See* doc. 8-7 at PageID 303, 305. Accordingly, the Court recommends a disability onset date of September 1, 2007.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The ALJ's non-disability finding be found **UNSUPPORTED BY SUBSTANTIAL EVIDENCE**, and **REVERSED**;

2. This case be **REMANDED FOR AN IMMEDIATE AWARD OF SSI BENEFITS WITH AN ONSET DATE OF SEPTEMBER 1, 2007**; and

3. This case be **CLOSED** on the docket of this Court.

August 6, 2012                              **s/Michael J. Newman**
                                            United States Magistrate Judge

# **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).